UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

UNITED STATES OF AMERICA

   - against -

JULIO DEJESUS
                 Defendant.

----------------------------------------X

08 Cr. 979 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/10

**Sweet, D.J.**

On September 22, 2009, Julio DeJesus ("DeJesus" or the "Defendant") appeared before the Honorable Henry B. Pitman and allocated to one count of conspiring to distribute and possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(B). For the reasons set forth below, DeJesus will be sentenced to 46 months' imprisonment and a term of three years' supervised release. DeJesus also will be required to pay a special assessment of $100. DeJesus shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any and all property constituting or derived from proceeds he obtained directly or indirectly as a result of the offenses and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of

1

the offense.

## Prior Proceedings

Indictment 08 CR 979 (RWS) was filed in the Southern District of New York. Count One charges that in August 2008, in the Southern District of New York and elsewhere, DeJesus conspired to purchase approximately two kilograms of cocaine for $50,000 to $60,000.

Defendant's sentencing is currently scheduled for February 8, 2010.

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. As the Supreme Court explained in Gall v. United States, 552 U.S. 38 (2007):

2

[A] district court should begin all sentencing
proceedings by correctly calculating the
applicable Guidelines range.  As a matter of
administration and to secure nationwide
consistency, the Guidelines should be the starting
point and the initial benchmark.  The Guidelines
are not the only consideration, however.
Accordingly, after giving both parties an
opportunity to argue for whatever sentence they
deem appropriate, the district judge should then
consider all of the § 3553(a) factors to determine
whether they support the sentence requested by a
party. In so doing, he may not presume that the
Guidelines range is reasonable.  He must make an
individualized assessment based on the facts
presented.

Id. at 49-50 (internal citation and footnote omitted).  Thus, in

addition to analysis of the Guidelines, the sentence imposed here

results from consideration of:

(1) the nature and circumstances of the offense
and the history and characteristics of the
defendant;

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the
offense, to promote respect for the law,
and to provide just punishment for the
offense;

(B) to afford adequate deterrence to criminal
conduct;

(C) to protect the public from further crimes
of the defendant; and

(D) to provide the defendant with needed
educational or vocational training,
medical care, or other correctional
treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range

3

established for-

    (A) the applicable category of offense
    committed by the applicable category of
    defendant as set forth in the guidelines
    . . . ;

(5) any pertinent policy statement . . . [issued
by the Sentencing Commission];

(6) the need to avoid unwarranted sentence
disparities among defendants with similar records
who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims
of the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find all
the facts appropriate for determining a sentence, whether that
sentence is a so-called Guidelines sentence or not.  See Crosby,
397 F.3d at 111.

    In light of the Court's statutory responsibility "to
'impose a sentence sufficient, but not greater than necessary' to
accomplish the goals of sentencing," Kimbrough v. United States,
552 U.S. 85, 570 (2007) (quoting 18 U.S.C. § 3553(a)), and having
considered the Guidelines and all of the factors set forth in §
3553(a), it is determined that a Guidelines sentence is warranted
in the instant case.

**The Defendant**

    The Court adopts the facts set forth in the Probation

4

Department's Presentence Investigation Report ("PSR") with respect to DeJesus's personal and family history.

## The Offense Conduct

The following description draws on the PSR.  The specific facts of the underlying conduct are adopted as set forth in that report.

On August 5, 2008, a confidential informant ("CI") for the Government met with Rafael Angelo Acosta ("Acosta"), DeJesus's co-defendant, and another individual not named as a defendant herein, in New York, New York.  During that meeting, Acosta informed the CI that an associate of his, subsequently identified as the Defendant, wanted to purchase multiple kilograms of cocaine.  CI stated that he was prepared to sell DeJesus cocaine for $31,000 per kilogram.  Ultimately DeJesus and Acosta worked out a deal with CI to purchase approximately 2 kilograms of cocaine in exchange for approximately $50,000 to $60,000.

On August 7, 2008, FBI agents conducted surveillance in the Bronx, New York, and observed CI meet with Acosta, DeJesus, and another individual at a diner.  During the meeting, the CI advised that the cocaine was in his car and that he would

5

disclose the location of the car once he received confirmation that Acosta and DeJesus had the money for the cocaine.  CI also provided the keys to the car.

Thereafter, Acosta, DeJesus, and the other individual got into a car parked near the diner.  CI received a phone call from one of the men informing him that they had the money for the cocaine.  In response, CI informed them that the car was parked at the Bay Plaza parking lot in the Bronx.

While agents were conducting surveillance at that parking lot they observed Acosta and DeJesus arrive and park near the car.  After they exited their vehicle, DeJesus and Acosta approached the car.  Acosta was observed carrying a bag.  Agents approached the men and identified themselves as law enforcement agents.  While DeJesus was placed under arrest, Acosta began running away.  While agents chased Acosta, they observed him through the bag.  Acosta was ultimately apprehended by agents and placed under arrest.  The bag was located and found to contain approximately $50,000.  In addition, Acosta had several thousand dollars in cash in his pant's pocket, which he later admitted was part of the money that DeJesus had brought to purchase the cocaine.

Following his arrest and after being advised of his Miranda rights, DeJesus states that he met with Acosta and told Acosta that he wanted to purchase multiple kilograms of cocaine. Acosta later called him and stated that he had someone who could supply the cocaine for $30,000 per kilogram. DeJesus further admitted that on August 7, 2008, he brought approximately $50,000 in cash to purchase the cocaine that he went to the Bay Plaza parking lot to pick up the cocaine.

## The Relevant Statutory Provisions

There is a minimum term of imprisonment of five years, and a mandatory minimum of four years' supervised release pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846.

DeJesus is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. §§ 3561(a)(2) and 21 U.S.C. 841(b)(1)(B) and 846.

The maximum fine is $2,000,000 pursuant to 21 U.S.C. § 841(b)(1)(B) and 846. Pursuant to 18 U.S.C. § 3013, a special assessment of $100 is mandatory.

7

As a result of committing the offense alleged in the Indictment, DeJesus shall forfeit to the United States, pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), and (a)(3), all property real and personal, involved in the offense or traceable to such property.

**The Guidelines**

The November 1, 2009 edition of the United States Sentencing Commission Guidelines Manual has been used in this case, pursuant to § 1B1.11(a).

The Guideline for the violation of 21 U.S.C. §§ 812, 841(a)(1) and (b)(1)(B) that applies to DeJesus is found in § 2D1.1. Because the offense involved more than two kilograms but less than 3.5 kilograms, the base offense level is 28. Because the Defendant meets the criteria for a "safety valve" reduction, the offense level is reduced by two levels, pursuant to § 2D1.1(b)(11) and § 5C1.2(a)(1)-(5). DeJesus is entitled to a three-level decrease in his offense level for acceptance of responsibility under § 3E1.1(a).

Accordingly, the applicable offense level is 23.

Based on information available to the Government

(including representations by the defense), Defendant has no criminal history points.  Thus his Criminal History Category is I.

Based on a total offense level of 23 and a Criminal History Category of I, the Guidelines range for imprisonment is 46 to 57 months.

The Guidelines range for a term of supervised release is at least four years but not more than five years, pursuant to § 5D1.2(c).  However, if the criteria listed in § 5C1.2 are met, as they are here, the term of supervised release would be at least three but not more than five years, pursuant to § 5D1.2(a)(1) and Application Note 2.  If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

Probation is expressly precluded by statute in this case, but because the applicable Guidelines range is in Zone D of the Sentencing Table, DeJesus is not eligible for probation under the Guidelines either, pursuant to § 5B1.1, Application Note 2.

The fine range for the instant offense is from $10,000 to $2,000,000, pursuant to § 5E1.2(c)(3)and (4)(A). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,157.88 to be used for imprisonment, a monthly cost of $311.94 for supervision, and a monthly cost of $1,990.13 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, it is determined that a sentence within the Guidelines range is warranted in the instant case.

10

**The Sentence**

For the instant offense, DeJesus will be sentenced to 46 months' imprisonment and a three-year term of supervised release.

DeJesus is to report to the nearest United States Probation Office within seventy-two hours of release from custody. It is recommended that he be supervised by the district of his residence.

As mandatory conditions of his supervised release, DeJesus shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) refrain from any unlawful use of a controlled substance; and (5) shall cooperate in the collection of DNA as directed by the probation officer. The defendant shall submit to one drug testing within fifteen days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, for offenses committed after September

11

13, 1994, the court shall require that all offenders on probation, parole, or supervised release submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. § 3563(a)(5) and § 3583(d).

The Defendant admitted to a history of using marijuana that dates back to his teen years.  Although he has assertively remained drug free since his arrest, it appears that the imposition of the mandatory drug testing condition should be imposed as a precautionary measure.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special condition that Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.  A

12

special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

DeJesus shall forfeit to the United States all property, real and personal, involved in the offense or traceable to such property.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for February 8, 2010.

It is so ordered.

**New York, NY**
**February**    , **2010**

ROBERT W. SWEET
U.S.D.J.

13